**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| In re:<br><br>ALASKAN ADVENTURE TOURS, INC.,<br><br>Debtor. | Case No. A10-00282-DMD<br>Chapter 11<br><br>**Filed On<br>6/18/10** |

**MEMORANDUM ON DISMISSAL, RELIEF FROM STAY,
AND ADEQUATE PROTECTION**

This chapter 11 proceeding is the culmination of years of tax litigation by Kimberly Reidel-Byler, her husband Darren Byler and the City and Borough of Yakutat. Reidel-Byler is the 100% owner of the debtor, Alaskan Adventure Tours ("AAT"). The City and Borough of Yakutat ("CBY") holds a substantial tax lien against AAT's assets. Promptly after AAT filed its chapter 11 petition, CBY moved for dismissal on the grounds of bad faith. Under the circumstances present here, I find CBY's motion well taken. The motion to dismiss will be granted, under the conditions requested by CBY. Further, the motion for relief from stay will be granted, to the extent relief from stay is necessary to satisfy the conditions specified for dismissal. Finally, CBY's request for adequate protection is granted to the extent already provided in this court's Order Granting Debtor's Motion for Authority to Conduct Business Outside the Ordinary Course, entered on June 7, 2010, and until such time as the United States District Court can address these issues in the context of the civil action pending before that court.

Discussion

AAT was formed in 2003 with Reidel-Byler as the sole shareholder. AAT conducted big game hunting in Southcentral Alaska using a large vessel, the 110′ M/V *Alaskan Leader*, as a base, with assistance from smaller vessels. In 2007, AAT conducted business within the boundaries of the City and Borough of Yakutat. CBY sent several notices to AAT advising of its 4% sales tax. AAT did not respond to the notices or pay the applicable sales tax. CBY gave AAT notice of audit hearings, but AAT never appeared. CBY recorded a Notice of Tax Lien on December 14, 2007.[1] The stated amount of the lien was $18,601.69. CBY mailed a copy of the notice to AAT on December 20, 2007.

On December 31, 2007, Reidel-Byler created a new company, ABC Leasing, LLC. She was the owner of the company. On January 10, 2008, Reidel-Byler transferred all of AAT's assets to herself individually. She contended that this transfer was made to pay an outstanding wage claim due her of $360,000.00. She then transferred the assets to ABC Leasing.

In 2008, CBY sued AAT in Juneau state court to collect the unpaid taxes and foreclose on its tax lien. It obtained a judgment of $95,808.46 against AAT.[2] The judgment also stated that the tax lien previously filed by CBY was foreclosed against all of AAT's real and personal property.

---

[1] CBY's Mem. in Supp. of Mot. to Dismiss or, in the Alternative, for Relief from Automatic Stay and/or for Adequate Protection, filed Apr. 21, 2010 (Docket No. 16-1), Ex. 1.

[2] *Id.*, Ex. 3.

2

CBY then filed a supplemental complaint which alleged that the conveyances of AAT's assets to Reidel-Byler and ABC Leasing were fraudulent. In a February 16, 2010, special verdict, a state court jury found that the transfer of assets had been fraudulent and that Reidel-Byler had intentionally transferred and concealed AAT assets in violation of a court order prohibiting such transfers.[3] The jury also found that Reidel-Byler had lied repeatedly at judgment debtor examinations concerning the existence and value of AAT assets. Following the jury verdict, a second judgment was entered in favor of CBY against AAT, ABC Leasing and Reidel-Byler.[4] The judgment stated that the transfers from AAT to Reidel-Byler and then to ABC Leasing were void as fraudulent conveyances, and that the assets were subject to execution on account of CBY's earlier judgment. On March 18, 2010, Superior Court Judge Patricia Collins also entered a civil contempt order against Reidel-Byler for lying at judgment debtor examinations and for concealing and transferring AAT assets in violation of a court order prohibiting the transfers.[5]

In addition to CBY's tax claim, a sizeable wrongful death claim has been asserted against AAT. This claim is asserted by Reidel-Byler's husband, Darren Byler, as personal representative of his father's estate. Darren's Father, Jerry Byler, drowned in Icy Bay, Alaska, on May 14, 2007. At the time of his death, Jerry was aboard a small boat attached to a larger AAT vessel. A probate proceeding was initiated in Arkansas by Lena

---

[3] *Id.*, Ex. 4.

[4] *Id.*, Ex. 5.

[5] CBY's Mem. in Supp. of Mot. to Dismiss (Docket No. 16-1), Ex. 6.

Byler, Darren's step-mother, as personal representative. No wrongful death claim was asserted and the estate was closed June 12, 2008.[6] On June 17, 2008, Darren Byler filed a petition for subsequent administration in Alaska.[7] On July 7, 2008, Darren and Reidel-Byler executed an "Agreement Between Alaska Adventure Tours, Inc/ABC Leading, LLC and the Estate of Jerry Byler" in which AAT and ABC agreed to settle the wrongful death claim for $2.5 million.[8] The settlement was secured by a $2.5 million preferred mortgage against the vessel *Alaskan Leader*, but Darren agreed that AAT/ABC would have full control of the vessel and all other AAT/ABC assets for a period of two years.[9]

After the jury in CBY's state court action had entered its special verdict in the the fraudulent conveyance action, Darren Byler commenced an action in the United States District Court for the District of Alaska on behalf of his father's estate against the M/V *Alaskan Leader* and, on March 16, 2010, moved for ex parte issuance of a warrant *in rem* against the vessel. Darren sought to arrest the vessel on the basis of the settlement agreement between AAT/ABC and his father's estate and the preferred mortgage that the settlement agreement had purported to grant. Magistrate Judge John Roberts denied this relief.[10] CBY

---

[6] *Id.*, Ex. 9.

[7] *Id.*, Ex. 10.

[8] *Id.*, Ex. 12.

[9] CBY's Mem. in Supp. of Mot. to Dismiss (Docket No. 16-1), Exs. 12, 13. The fact that the agreement imposed liability upon both AAT and ABC indicates that Reidel-Byler and Darren considered the transfer of AAT's assets to ABC a sham transaction.

[10] *Id.*, Ex. 8.

4

has intervened in the proceedings before Judge Roberts, which are now stayed due to AAT's chapter 11 filing.

CBY procured the arrest of AAT's vessels on April 8, 2010, at approximately 10:00 a.m. AAT filed its chapter 11 petition roughly two hours later, at 12:20 p.m.[11] CBY filed motions to dismiss, for relief from stay and for adequate protection on April 21, 2010. The motions were heard on May 18, 2010 and May 24, 2010. At the conclusion of oral argument on May 24th, the parties stipulated that this court defer its decision until a status conference on June 7, 2010. In the interim, the debtor filed a motion to allow it to move the M/V *Sound Adventure* from Kodiak Island to Amelia, Louisiana to possibly work for British Petroleum in the Gulf of Mexico oil spill clean-up. This court granted the motion subject to a number of conditions.

The Ninth Circuit has found that bad faith can constitute cause for the dismissal of a chapter 11 petition. In *Marsch v. Marsch (In re Marsch)*,[12] the court stated:

> The bankruptcy court may dismiss a Chapter 11 case "for cause" pursuant to 11 U.S.C. § 1112(b). Although section 1112(b) does not explicitly require that cases be filed in "good faith," courts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal. "The existence of good faith depends on an amalgam of factors and not upon a specific fact." The test is whether a debtor is attempting to unreasonably deter and

---

[11] Ch. 11 Petition, filed Apr. 8, 2010 (Docket No. 1).

[12] 36 F.3d 825 (9th Cir. 1994).

5

>harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis.[13]

The court went on to find that a chapter 11 petition filed by a state court judgment debtor solely to avoid the posting of an appeal bond, when the debtor had sufficient nonbusiness assets to satisfy a judgment, was filed in bad faith and subject to dismissal.

The Ninth Circuit has further noted that bad faith, as cause for dismissal, "involves the application of the 'totality of the circumstances' test."[14] Among the factors a bankruptcy court should consider are whether the debtor has unfairly manipulated the Bankruptcy Code, filed his petition or plan in an inequitable manner, or filed solely to defeat state court litigation.[15] The court should also consider "whether egregious behavior is present."[16]

Here, CBY seeks to establish bad faith under a number of theories. First, CBY alleges bad faith arising through the debtor's repeated failure to pay sales taxes. While the failure to pay sales taxes, by itself, is insufficient to justify dismissal on bad faith grounds, in this case the debtor both failed to pay sales taxes *and* fraudulently transferred all of its assets to other entities to avoid their payment. Also, Reidel-Byler lied repeatedly about the debtor's assets and was found to be in civil contempt by the state court. Further, Reidel-

---

[13] *Id.* at 828 (citations omitted).

[14] *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224 (9th Cir. 1999), *citing Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir. 1994).

[15] *Leavitt*, 171 F.3d at 1224.

[16] *Id.*

6

Byler lied about a $360,000 "loan" allegedly made to the debtor, and entered into a collusive transaction with her husband whereby the debtor's assets were mortgaged for $2.5 million for the benefit of the estate of Jerry Byler.

CBY argues that it is the only true creditor of substance and that chapter 11 shouldn't be invoked to resolve what is essentially a two-party dispute. There are other creditors scheduled by AAT, however, who cannot be considered insiders or otherwise acting in collusion with the Bylers. The IRS is listed with a disputed priority claim for $128,582.59. Accountants and attorneys with claims of $79,956.35 are also listed as disputed, unsecured creditors. This is not just a two party dispute.

CBY argues that AAT has no potentially viable business worthy of protection under chapter 11. It is certainly true that Darren Byler has lost his guide license and cannot work as a hunting guide. The Bylers' attempts to create an eco-tourism business do not look promising either. AAT has but one $45,000.00 contract for this summer. The government's shut-down of Shell's drilling plans in the Beaufort and Chukchi Seas means that the debtor's largest vessel, the M/V *Alaskan Explorer*, will not be working for Shell this summer, although there may be work for AAT next summer. A potential opportunity exists for AAT's M/V *Sound Adventure*, however, due to the disastrous British Petroleum oil spill in the Gulf of Mexico. The vessel is en route to the Gulf and may find work there. The extent and profitability of the work is unknown at this time.

CBY maintains that the debtor's petition should be dismissed utilizing the factors from *Little Creek Development Co. v. Commonwealth Mortgage Corp. (Matter of*

7

*Little Creek Development Co).*[17] In that case, the Fifth Circuit stated that several of the following conditions typically exist in a bad faith filing:

> The debtor has one asset, such as a tract of undeveloped or developed real property. The secured creditors' liens encumber this tract. There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments . . . Typically, there are only a few, if any, unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court. Alternatively, the debtor and one creditor may have proceeded to a stand-still in state court litigation and the debtor has lost or has been required to post a bond which it cannot afford. Bankruptcy offers the only possibility of forestalling loss of the property. There are sometimes allegations of wrongdoing by the debtor or its principals.[18]

Application of the *Little Creek* factors leads to mixed results here. The debtor has more than one asset. It has two merchant vessels of significance: the 110' M/V *Alaskan Leader* and the 39' M/V *Sound Adventure*. The debtor does not have employees other than its principals, and currently has no cash flow. This may change in the near future, however, if the *Sound Adventure* is chartered for work in the Gulf of Mexico. With such a charter, the

---

[17] 779 F.2d 1068 (5th Cir. 1986).

[18] *Id.* at 1073.

8

debtor should have the ability to make adequate protection payments. Whether the employment will be long enough to sustain a plan remains to be seen.

There are only a few unsecured creditors in this case, but their claims are not small. The IRS is listed with a disputed, priority unsecured claim of $128,582.29 and other unsecured claims total roughly $80,000.00. The debtor has lost its litigation with CBY. It lacks the present ability to pay CBY's judgments, which are in excess of $200,000. Further, it is difficult to determine whether AAT can propose a feasible plan when the wrongful death claim held by Jerry Byler's estate remains unliquidated. If a valid wrongful death claim and maritime lien is found to exist on behalf of Jerry Byler's estate, it would prime CBY's judgments and all other claims.

Given the status of CBY's judgments and collection efforts, bankruptcy does seem to offer the only possibility of forestalling loss of the debtor's vessels to this creditor. There have been allegations of wrongdoing by Kimberly Reidel-Byler, a principal of the debtor. Those allegations have been proven at trial in state court.

Looking at the "totality of circumstances" present here, a finding of bad faith is warranted. In my view, the debtor is attempting to unreasonably deter and harass CBY through the filing of its chapter 11 petition. AAT is not attempting to effect a speedy, efficient reorganization, nor can it propose a feasible plan until the wrongful death claim has been liquidated. This court can neither liquidate the claim nor estimate it for purposes of confirming a chapter 11 plan.[19] The debtor, through its principals, is seeking to game the

---

[19] 28 U.S.C. § 157(b)(2)(B).

9

system to its advantage, something that has occurred repeatedly in the past. As noted by Collier:

> One of the basic underpinnings of the good faith doctrine, and a factor that helps explain its purpose, is the fundamental policy that bankruptcy relief is generally limited to the "honest but unfortunate debtor." As one court has explained in the context of dismissing a chapter 11 case for lack of good faith: "Congress has never intended that bankruptcy be a refuge for the irresponsible, unscrupulous or cunning individual."[20]

The Bylers own and control AAT. They are not honest debtors. Their misfortune with CBY has been brought about by their own misconduct. They do not deserve the benefits of chapter 11. This case should be dismissed.

CBY modified its request for dismissal at the status conference held June 7, 2010. It requested that the court delay dismissal until four conditions were met: (1) that the Federal District Court assume jurisdiction over the *in rem* action; (2) that the complaint pending in Federal District Court be amended to add the *in personam* action; (3) that an order regarding the appointment of a receiver be entered in Federal District Court;[21] and (4) to the extent it is appropriate, that this court's Order Granting Debtor's Motion for Authority to Conduct Business Outside the Ordinary Course, entered on June 7, 2010 (Docket No. 53),

---

[20] 7 *Collier on Bankruptcy,* ¶ 1112.07[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

[21] This order may be entered on stipulation of the parties or upon determination of an appropriate motion filed in that court.

be adopted by the Federal District Court. I find that these conditions are reasonable. They will be adopted in this court's conditional order of dismissal.

As for CBY's remaining motions, this court will grant relief from stay, to the extent necessary to permit the above four conditions to be satisfied in Federal District Court proceeding.[22] Once those conditions have been satisfied, a final order of dismissal will be entered in this case and further relief from stay will be moot. Finally, CBY is granted adequate protection as stated in this court's Order Granting Debtor's Motion for Authority to Conduct Business Outside the Ordinary Course, entered on June 7, 2010 (Docket No. 53). No additional relief will be granted at this time. The status quo will be maintained until the above four conditions have been satisfied in the Federal District Court proceeding, at which time this case will be dismissed and AAT, CBY, and the Estate of Jerry Byler may seek any further relief or remedies in that court.

An order will be entered consistent with this memorandum.

/ / / /

/ / / /


DATED: June 17, 2010.

                                      BY THE COURT

                                      /s/ Donald MacDonald IV

---

[22] "The existence of bad faith in commencing a bankruptcy case constitutes cause for granting relief from the stay pursuant to § 362(d)." *Duvar Apt., Inc. v. Fed'l Deposit Ins. Corp. (In re Duvar Apt., Inc.)*, 205 B.R. 196, 200 (B.A.P. 9th Cir. 1996), *citing In re Walter*, 108 B.R. 244, 247 (Bankr. C.D. Cal. 1989).

DONALD MacDONALD IV
United States Bankruptcy Judge

Serve:  G. Spraker, Esq.
S. Shamburek, Esq.
W. DeVoe, Esq.
J. Brennan, Esq.
K. Hill, Esq.
U.S. Trustee
CM/ECF Participants per Notice of Electronic Filing
Hon. J. Roberts, U. S. Magistrate Judge (*courtesy copy* re: Case No. 3:10-cv-00055-HRH-JDR)
6/18/10