# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

In re:

ALASKAN ADVENTURE TOURS, INC.,

                Debtor.

Case No. A10-00282-DMD
Chapter 11

**Filed On 11/17/10**

## MEMORANDUM ON SANCTIONS AND ATTORNEY'S FEES

The City and Borough of Yakutat's ("CBY") motion for attorney's fees under Rule 9011 and Gary Spraker's application for attorney's fees duly came before the court for hearing on September 30, 2010. This court has jurisdiction over the dispute in accordance with 28 U.S.C. § 157(b)(2)(A) and the district court's order of reference. CBY's motion for attorney's fees will be denied. I will allow Mr. Spraker's attorney's fees in the sum of $38,810.00 and costs in the sum or $2,158.20.

Background

In my memorandum on dismissal, relief from stay and adequate protection, the events leading up to the debtor's Chapter 11 filing were summarized. I incorporate this prior memorandum by reference.[1]

Gary Spraker, attorney for the debtor, and Steve Shamburek, attorney for the creditor, were in contact with one another regarding the Bylers' dispute with CBY in early April of 2010. Spraker pleaded with Shamburek not to execute against the Bylers' two

---

[1] Docket No. 55, Memorandum on Dismissal, Relief from Stay, and Adequate Protection.

vessels. He requested time to prepare a bankruptcy petition. Shamburek refused his request and indicated CBY's intention to execute on its judgment.[2] CBY arrested the debtor's vessels on April 8, 2010 at approximately 10:00 a.m. The debtor filed its bankruptcy petition at 12:20 p.m. on the same day.

CBY filed motions to dismiss, for relief from stay and for adequate protection on April 21, 2010. CBY alleged that the debtor's Chapter 11 filing was made in bad faith. The motions were heard on May 18, 2010 and May 24, 2010. At the conclusion of oral argument on May 24th, the parties stipulated that this court defer its decision until a status conference on June 7, 2010. In the interim, Spraker filed a motion to conduct business outside the ordinary course. He sought to move the M/V *Sound Adventurer* from Kodiak Island to Amelia, Louisiana for work on the British Petroleum Gulf of Mexico oil spill. A hearing on the debtor's motion was held on June 7th, 2010 along with the status conference. Shortly after the hearing on June 7th, the court entered an order granting the debtor's motion for authority to conduct business outside the ordinary course.[3] Paragraph three of the order provided for adequate protection payments to the CBY. Subject to several adjustments, CBY was to obtain adequate protection payments in the amount of 50% of the daily charter rate received from British Petroleum or its subcontractor. CBY was also named as a loss payee on insurance and was to receive a preferred ship's mortgage while the vessel was in

---

[2] Docket No. 39, Exhibit A.

[3] Docket No. 53.

2

Louisiana. CBY requested the court to rule on it's pending motions at the close of the hearing. It also sought to delay dismissal until four conditions were met.[4]

On June 18th, 2010 this court entered an order conditionally granting CBY's motion to dismiss, granting CBY's motion for relief from stay, and motion for adequate protection.[5] The basis for the dismissal was bad faith.[6] CBY sought clarification of the order granting debtor's motion for authority to conduct business outside the ordinary course on August 5, 2010. After a hearing on August 17, 2010, the court entered an order that ultimately resolved the issue.[7] Gary Spraker filed an application for attorney's fees on August 31, 2010.[8] He seeks fees and costs of $42,468.20. CBY applied for fees under Rule 9011 on September 10, 2010.[9] It seeks attorney's fees and costs of $42,899.50. Objections to both applications were filed and a hearing was held on September 30, 2010. The motions are now ripe for determination.

---

[4] The conditions were as follows: (1) that the Alaska Federal District Court assume jurisdiction over an *in rem* action; (2) that a complaint pending in Alaska Federal District Court be amended to add an *in personnam* action; (3) that an order regarding the appointment of a receiver be entered in Alaska Federal District Court, and (4) that to the extent it is appropriate, the bankruptcy court's order granting motion for authority to conduct business outside the ordinary course, entered June 7, 2010 (Docket No. 53) be adopted by the Alaska Federal District Court.

[5] Docket No. 56.

[6] Docker No. 55.

[7] Docket No. 67.

[8] Docket No. 68.

[9] Docket No. 75.

3

<u>Analysis</u>

Rule 9011 provides in part:

**(a) Signing of papers**

Every petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name. A party who is not represented by an attorney shall sign all papers. Each paper shall state the signer's address and telephone number, if any. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.

**(b) Representations to the court**

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
>
> **(c) Sanctions**
> If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation. . . .[10]

I found the authorities cited by the debtor's counsel on page 16 of his opposition to CBY's motion for attorney's fees to be persuasive. There he stated:

> As a preliminary matter, the burden of proof is on the party seeking sanctions under Rule 9011. *In re Weaver*, 307 B.R. 834, 841 (Bankr. S.D. Miss. 2002); *In re Kliegl Bros. Universal Elec. Stage Lighting Co., Inc.,* 238 B.R. 531, 541 (Bankr. E.D.N.Y. 1999). "Courts reserve Rule 9011 sanctions for 'exceptional circumstances' where a claim is 'patently unmeritorious or frivolous.'" *In re 15375 Memorial Corporation,* 430 B.R. 142, 150 (Bankr. D. Del. 2010). The test for Rule 9011 sanctions is stringent, in large part because, "[t]he rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." *Id.* (quoting Advisory Committee Notes for Fed. R. Civ. P. 11); *see also In re Aphton Corporation,* 423 B.R. 76, 96 (Bankr. D. Del. 2010); *In re Lewis,* 79 B.R. 893, 896 (9th Cir. B.A.P. 1990). As recognized by the bankruptcy court in *In re HBA East, Inc.,* 101 B.R. 411, 415 (Bankr. E.D.N.Y. 1989), "any and

---

[10] Rule 9011, Fed. R. Bankr. Pro.

5

all doubts must be resolved in favor of the signer." (footnotes omitted).[11]

In two appellate cases arising in the ninth circuit in the late 1980s, the courts indicated that sanctions were mandatory when a Chapter 11 filing was dismissed on bad faith grounds. The first case was a ninth circuit BAP decision: *Eighty South Lake, Inc. v. Bank of America.*[12] There the court affirmed a lower court ruling assessing sanctions for a bad faith Chapter 11 filing. The court stated: "Indeed, Bankr. Rule 9011 requires that the bankruptcy court impose sanctions upon a finding of bad faith . . . ."[13] Later the ninth circuit addressed the issue in *Mortgage Mart, Inc. v. Rechnitzer.*[14] The court affirmed a lower court decision denying sanctions to a Chapter 13 creditor. It stated: "If the bankruptcy court determines as a factual matter that a debtor's successive filings were not proposed in good faith, the court must impose sanctions under Bankr. R. 9011."[15] Under the version of Rule 9011 in effect in 1987 and 1988, a bankruptcy court had no discretion in imposing sanctions once a violation of the rule had been established. If a party violated the rule, the court "shall impose . . . an appropriate sanction."[16]

---

[11] Docket No. 81, at page 16.

[12] *(In re South Lake, Inc.)*, 81 B.R. 580 ( 9th Cir. B.A.P. 1987).

[13] *Eighty South Lake, Inc. v. Bank of America (In re Eighty South Lake, Inc.),* 81 B.R. at 582.

[14] (*In re Chisum),* 847 F.2d 597 (9th Cir. 1988); *cert. denied,* 488 U.S. 892 (1988).

[15] *Mortgage Mart, Inc. v. Rechnitzer (In re Chisum),* 847 F. 2d at 599.

[16] Bankruptcy Rule 9011 (1987-1988). In *Reisland v. Nenana Heating Services*, 5 A.B.R. 176, 178 (D. Alaska 1998) the district court cited *Eighty South Lake* and *Chisum* as authority for the mandatory imposition of sanctions after a bad faith filing.

6

A number of courts did not agree with the imposition of "automatic" sanctions arising out of a bad faith filing. Prior to the decisions in *Eighty South Lake* and *Mortgage Mart*, a bankruptcy court in San Diego found that sanctions did not necessarily arise under such circumstances.[17] The court stated:

> Although the Court has determined that dismissal of this case pursuant to 11 U.S.C. § 1112(b) is appropriate, that does not and should not automatically result in the imposition of sanctions under Bankruptcy Rule 9011. The standards for dismissing a case under § 1112(b) are different from the standards used to impose sanctions under Bankruptcy Rule 9011. Such a *per se* rule for the imposition of sanctions is inappropriate, particularly in an area of bankruptcy practice which is rapidly developing (i.e. bad faith filings). (footnotes omitted).[18]

A number of courts have followed this decision.[19] Judge Trott, concurring in part and dissenting in part in *Marsch v. Marsch*,[20] also found adoption of a *per se* rule inappropriate.

The version of 9011 of the Federal Rules of Bankruptcy Procedure now in effect does not contain the mandatory language of its predecessors. Now, if a court determines that a violation of 9011(b) has occurred, the court "may . . . impose an

---

[17] *In re Southern California Sound Systems, Inc.,* 69 B.R. 893 (Bankr. S.D. Cal. 1987).

[18] *In re Southern California Sound Systems, Inc.,* 69 B.R. at 901.

[19] *Federal Deposit Insurance Corporation v. Fadili,* 165 B.R. 58 (D. Mass. 1994); *In re Nichols,* 221 B.R, 275 (Bankr. N.D. Ok. 1998); *In re Park Place Associates*, 118 B.R. 613 (Bankr. N.D. Ill. 1990); *In re HBA East, Inc.,* 101 B.R. 411 (Bankr. E.D. N.Y. 1989).

[20] *Marsch v. Marsch (In re Marsch),* 36 F.3d 825, 832 at footnote 1 (9th Cir. 1994). The majority did not adopt a *per se* rule for the imposition of sanctions. It adopted a sliding scale approach at page 830 of the decision.

appropriate sanction."[21] This change in the rule is significant: it gives this court discretion as to whether or not to apply sanctions, even if a violation of 9011(b) were to occur. There is no *per se* rule requiring the automatic imposition of sanctions after a dismissal on bad faith grounds. This court must determine, independent of its' prior ruling, whether or not a violation of Rule 9011(b) has occurred.

Under *Marsch,* "bankruptcy courts must consider both frivolousness *and* improper purpose on a sliding scale, where the more compelling the showing as to one element, the less decisive need be the showing as to the other."[22] Rule 9011 has been modified such that consideration of improper purpose now precedes that of frivolousness. Rule 9011 (b)(1) provides that an attorney or party signing a pleading certifies that to the best of their knowledge after reasonable inquiry that the pleading "is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."[23] CBY repeatedly points to this court's memorandum of June 17, 2010 and my finding that the debtor was attempting to "unreasonably deter and harass" CBY through the filing of the Chapter 11 petition. CBY also cites my statement that the debtor's principals were seeking to "game the system" as further grounds for sanctions. Additionally, I also stated that the debtor's principals fraudulently transferred assets and entered into a collusive transaction where the debtor's assets were mortgaged for $2.5 million to the estate

---

[21] Rule 9011(c), Fed. R. Bankr. Pro.

[22] *Marsch v. Marsch (In re Marsch),* 36 F.3d at 830.

[23] Rule 9011(b)(1), Fed. R. Bankr. Pro.

8

of Jerry Byler. It's certainly true that I made all those statements in the memorandum. But in reviewing the totality of the circumstances, I made other findings that are not consistent with a finding of improper purpose under Rule 9011. They include the following: (1) the debtor had more than one creditor of substance; (2) the debtor may have work for the M/V *Alaskan Leader* next summer; (3) there may be immediate work for what was then called the *M/V Sound Adventure* in the Gulf of Mexico; and (4) bankruptcy offered the only possibility of forestalling the imminent loss of the debtor's vessels to CBY. Additionally, I misread 28 U.S.C. § 157(b)(2)(B) and found that a bankruptcy court could not estimate Jerry Byler's wrongful death claim for purposes of confirming a Chapter 11 plan. As correctly noted by Mr. Spraker, a bankruptcy court retains the power to estimate a wrongful death claim for plan confirmation purposes. It cannot liquidate the claim for distribution purposes, however. The fact that this court could estimate the claim for voting purposes is consistent with a finding of proper purpose under Rule 9011(b)(1).

My June 17th memorandum also considered the debtor's and its principals' prepetition conduct at length. That conduct played a large part in my conclusion that the debtor was continuing, through the bankruptcy, its efforts to deter and harass CBY. My perspective has changed, however. It can now be seen that in fact the debtor was making substantial and good faith efforts on behalf of the estate which continued past the point of conditional dismissal. The Bylers and their attorney Gary Spraker worked tirelessly to pursue a charter for the M/V *Sound Adventure* (now the M/V *Gulf Explorer)* in the Gulf of Mexico. They transported the vessel by barge to Seattle, had repairs made there, and trucked

9

the vessel to Louisiana in a very short period of time, fronting all the costs. The logistics of the move were formidable. Additionally, Spraker processed the documentation necessary for CBY to obtain a preferred marine mortgage on the vessel. The vessel has been insured for the benefit of CBY. Through the efforts of the Bylers and Spraker, CBY has received over $100,000.00 in payments. The bankruptcy estate has also received substantial amounts of cash.[24]

CBY dismisses this good fortune as simply a "fortuitous event" that the Bylers and Spraker could not foresee when the petition was filed. I disagree. At the time the petition was filed the Bylers were consulting with Aldrich Marine Services for work in the Beaufort and Chukchi Seas. Aldrich planned to charter the M/V *Alaskan Leader* in conjunction with Shell's offshore drilling program. The charter rate was to be $6,500.00 per day, even more lucrative than the Gulf of Mexico charter. Ironically, the Gulf of Mexico spill led the federal government to close the Shell offshore project for 2010. The Bylers were quick on their feet, however, and converted this closure into a win-win situation for both themselves and CBY. It was not "fortuitous" because the Bylers were prepared to react quickly to a change of business circumstances. Moreover, they might have earned substantially more income if the Gulf of Mexico spill hadn't occurred. When presented with a business opportunity, the Bylers and Spraker pursued it with diligence even when substantial payments were to be made to CBY. "The court may examine an attorney's or party's postfiling actions to determine whether he or she believed that the claims asserted

---

[24] The cash may have gone to a receiver appointed by the United States District Court.

were reasonable when the document was signed or filed.(footnotes omitted)."[25]  Given the debtor's pre-petition contacts with Aldrich and their subsequent actions, I conclude that the filing of the petition was not made for any improper purpose or harassment within the meaning of Rule 9011(b)(1).  Rather, it was made for the legitimate purpose of reorganizing the debtor's business affairs.

The second basis for sanctions is the filing of frivolous pleadings.  A petition signed by a party or an attorney is a certification that "the claims, defenses, and other contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."[26]  A frivolous filing is one that "is both baseless and made without reasonable and competent inquiry."[27]  "[A] legal position is unwarranted by law only where, after reasonable inquiry, an attorney would recognize that it is patently clear that the position has absolutely no chance of success . . . if there is even modest difficulty in resolving the merits of the challenged position, then the Rule 11 certification has been satisfied."[28]

There was "modest difficulty" in resolving the merits of the challenged Chapter 11 petition.  It wasn't patently clear that the debtor had no chance of successfully reorganizing when the petition was filed.  The debtor owned two vessels, each of which had

---

[25] 10 *Collier on Bankruptcy,* ¶ 9011.04[6], (Alan M. Resnick & Henry J. Sommer eds., 15th ed. rev. 2010).

[26] Rule 9011(b)(2), Fed. R. Bankr. Pro.

[27] *Townsend v. Holman Consulting Corp.,* 929 F. 2d 1358, 1362 (9th Cir. 1990) (en banc).

[28] *In re HBA East, Inc.,* 101 B.R. 411, 415 (Bankr. E.D.N.Y. 1989)

11

profitable commercial uses. The debtor had a good chance of obtaining lucrative work in the Beaufort and Chukchi Seas from Shell and Aldrich Marine Services at the time the petition was filed.[29] Bankruptcy offered the only possibility of forestalling the imminent loss of the debtor's two vessels to CBY. CBY refused to give the debtor any time to prepare a bankruptcy petition before arresting of the vessels.

CBY argues that the Bylers past misconduct made the filing for Chapter 11 frivolous. Past misconduct is part of a "totality of circumstances" inquiry.[30] Unquestionably the Bylers engaged in egregious pre-petition behavior, but that fact alone does not make the petition frivolous. There are no ninth circuit or Supreme Court decisions that draw a clear line in the sand as to which misbehaving debtors can or cannot seek Chapter 11 relief. Both David Bundy and Erik LeRoy, experienced Anchorage Chapter 11 attorneys, contend that filing a Chapter 11 petition was warranted under the facts of this case. Even Kay Hill, the assistant United States Trustee for Alaska, opposed dismissal. Courts are required to consider every circumstance when ruling on a motion to dismiss and bad behavior is but one part of the mix. There were substantial grounds for filing Chapter 11 despite the Bylers' pre-petition actions.

Moreover, none of this court's prior decisions regarding dismissal of a Chapter11 petition for bad faith indicate that this debtor's petition was frivolous. In *In re*

---

[29] The debtor filed for Chapter 11 relief on April 8, 2010. The Deepwater Horizon oil spill did not occur until April 20, 2010. The governmental shut-down of drilling did not occur until some time after April 20, 2010.

[30] *Leavitt v. Soto (In re Leavitt),* 171 F.3d 1219, 1224 (9th Cir. 1999), citing *Eisen v. Curry (In re Eisen),* 14 F.3d 469, 470 (9th Cir. 1994).

12

*Nome Commercial Company,*[31] tort creditor Vicki Higashi obtained a $1.4 million judgment against Nome Commercial Company. Nome Commercial Company appealed. I refused to dismiss Nome's Chapter 11 petition on bad faith grounds because execution on the judgment would severely impair the debtor's business. I concluded that use of Chapter 11 as a substitute for a bond on appeal was appropriate and refused to dismiss the petition. Similarly, in *In re Zaruba,*[32] the issue of Chapter 11 bad faith was again before this court. Huna Totem Corporation had a judgment against the debtor which was on appeal. Because of possible severe disruption to his business, I concluded that Zaruba's use of a Chapter 11 petition in lieu of a bond to protect his assets on appeal was made in good faith.[33] While there were no appeals pending in this case at the time the petition was filed, it was warranted by existing law or by a nonfrivolous extension, modification or reversal of existing law or the establishment of new law. CBY sought to seize and sell the debtor's primary business assets. Because those assets were endangered, the debtor's Chapter 11 petition was not a frivolous filing. I conclude that Gary Spraker and Kimberly Reidel did not file a frivolous Chapter 11 petition in violation of Rule 9011(b)(2).

---

[31] 4 A.B.R. 358 (Bankr. D. Alaska 1996).

[32] 8 A.B.R. 449 (Bankr. D. Alaska 2007).

[33] I cited *In re Marshall,* 403 B.R. 668 (Bankr. C.D. Cal. 2009), favorably in the Zaruba decision. Marshall was a dispute between brothers, the sons of billionaire J. Howard Marshall II. Pierce Marshall sued his brother Howard, and obtained a $12 million judgment against him for fraud with malice. Howard appealed and filed for Chapter 11 relief. The bankruptcy court refused to dismiss the case on bad faith grounds. The court found that the judgment would dissipate most of Howard's assets and that Howard could not post a bond. Howard had also proposed a viable plan. The court denied the motion to dismiss on bad faith grounds.

I have considered both improper purposes and frivolousness under Rule 9011. There are no grounds for the imposition of sanctions under either subsection, with or without a sliding scale. Rule 9011 is not a fee-shifting mechanism and the imposition of sanctions is no longer mandatory under Rule 9011(c). Even if there were grounds for sanctions under Rule 9011(b), I would exercise my discretion and not impose them in this case. Nor would I impose sanctions based on a bankruptcy court's inherent power to sanction.[34] CBY's motion for attorney's fees under Rule 9011 will be denied.

Gary Spraker has applied for attorney's fees of $40,310.00 and costs of $2,158.20 for work performed from April 8, 2010 through August 31, 2010. CBY and the United States Trustee have objected to the fees. CBY's objections generally parallel it's motion for sanctions. It cites a number of cases holding that no fees are allowable to an attorney who should have known that a Chapter 11 was futile.[35] They do not apply here because Spraker knew that the debtor was negotiating a profitable charter arrangement with Aldrich Marine Services at the time of the filing of the petition. Mr. Spraker did not know that the Chapter 11 was futile.

---

[34] CBY contends that this court has the inherent power to sanction under *Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991)(rehearing denied 501 U.S. 1269).

[35] *Grunewaldt v. Mutual Life Insurance Co. of America (In re Coones Ranch, Inc.),* 7 F.3d 740, 744 (8th Cir. 1993); *Rubner & Cutner, P.C. v. U.S. Trustee (In re Lederman Enterprises, Inc.),* 997 F.2d 1321, 1324 (10th Cir. 1993); *In re Reed,* 890 F.2d 104, 105-106 (8th Cir. 1989); *New York Credit Men's Adjustment Bureau, Inc. v. Ballon, Stoll & Itzler (In re Casco Fashions, Inc.),* 490 F.2d 1197, 1198 (2nd Cir. 1973); *Roberts, Sheridan & Kotel, P.C. v. Bergun Brunswig Drug Co. (In re Mednet),* 251 B.R. 103, 107-108 (9th Cir. B.A.P. 2000); *Miner v. Westergren, Hauptman, O'Brien, Wolfe & Hadley, P.C. (In the Matter of King),* 96 B.R. 206, 207-208 (W.D. Mo. 1989); *In re G.W.C. Financial and Ins. Services, Inc.,* 8 B.R. 122, 125 (Bankr. C.D. Cal. 1981).

14

CBY argues that the schedules were incorrect in listing the Jerry Byler wrongful death claim as undisputed and CBY's judgment claims as unsecured, disputed and contingent. Mr. Spraker candidly admitted that there were errors in the schedules. If this case were continuing, appropriate amendments would be required. Changes to the schedules now would be pointless. I will deduct $1,500.00 from his application for scheduling errors.

CBY claims the bulk of fees were incurred to fight bad faith dismissal, for which the estate received no benefit. I disagree. If Mr. Spraker had rolled over on the dismissal, the debtor would have lost control of its assets. Without them, it could not have performed the valuable charter in the Gulf of Mexico. This is a rare case where attorney's fees are justified in spite of the dismissal.

The United States Trustee has filed a partial objection to fees. She seeks to share an administrative priority with Mr. Spraker as to any unpaid quarterly fees. I will include such a provision in my order for payment of fees. Additionally, I will include a judgment for quarterly fees in my final order dismissing this case.

Conclusion

The debtor and Mr. Spraker have produced a benefit for CBY and the estate. They should not be penalized for their efforts. I will not sanction Gary Spraker, Kimberly Riedel or the debtor for filing a Chapter 11 petition under the circumstances of this case. I will allow his reasonable attorney's fees and costs. An appropriate order and judgment will be entered.

15

DATED: November 17, 2010.

BY THE COURT

 /s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve:   G. Spraker, Esq.
J. Brennan, Esq.
S. Shamburek, Esq.
K. Hill, Esq.

11/17/10